# In the United States Court of Federal Claims

No. 18-542C
Filed Under Seal: February 15, 2019
Reissued: March 14, 2019[*]
NOT FOR PUBLICATION

| | |
|---|---|
| IT CONCEPTS INCORPORATED, )<br><br>Plaintiff, )<br><br>v. )<br><br>THE UNITED STATES, )<br><br>Defendant, )<br><br>v. )<br><br>AVANTGARDE, LLC, )<br><br>Defendant-Intervenor. ) | Post-Award Bid Protest; Motion For Judgment Upon The Administrative Record; RCFC 52.1; Injunctive Relief; Corrective Action. |

*Eric S. Crusius*, Attorney of Record, Holland & Knight LLP, Tysons, VA; *Mary Beth Bosco*, Of Counsel, *Rodney M. Perry*, Of Counsel, Holland and Knight LLP, Washington, DC, for plaintiff.

*Steven C. Hough*, Trial Attorney, *Elizabeth M. Hosford*, Assistant Director, *Robert E. Kirschman, Jr.*, Director, *Joseph H. Hunt*, Assistant Attorney General, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC; *Abigail Nawrocki*, Of Counsel, *P. Russell Wong*, Of Counsel, United States Patent and Trademark Office, for defendant.

*William A. Shook*, Counsel of Record, Law Offices of William A. Shook PLLC, Washington, DC, for defendant-intervenor.

---

[*] This Memorandum Opinion and Order was originally filed under seal on February 15, 2019 (docket entry no. 54).  The parties were given an opportunity to advise the Court of their views with respect to what information, if any, should be redacted from the Memorandum Opinion and Order. The parties filed a joint status report on March 12, 2019 (docket entry no. 56) proposing certain redactions, which the Court has adopted.  And so, the Court is reissuing the Memorandum Opinion and Order, dated February 15, 2019, with the agreed-upon redactions indicated by three consecutive asterisks within brackets ([* * *]).

## **MEMORANDUM OPINION AND ORDER**

GRIGGSBY, Judge

## I.       INTRODUCTION

In this post-award bid protest matter, IT Concepts Incorporated, ("ITC") challenges the decision of the United States Patent and Trademark Office ("USPTO") to take certain corrective action in connection with a solicitation for human resource information systems division support services.  *See generally* Am. Compl.  The parties have filed cross-motions for judgment upon the administrative record on the issues of whether the USPTO's decision to take corrective action— and the scope of the proposed corrective action—were rational, pursuant to Rule 52.1 of the Rules of the United States Court of Federal Claims ("RCFC").  *See generally* Pl. Mot.; Def. Mot.; Def.-Int. Mot.  For the reasons discussed below, the Court:  (1) **DENIES** ITC's motion for judgment upon the administrative record; (2) **GRANTS** the government's and AvantGarde LLC's ("AvantGarde") respective cross-motions for judgment upon the administrative record; and (3) **DISMISSES** the complaint.

## II.      FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.       Factual Background

ITC is the current awardee of a government contract to provide human resource information system division support services (the "HRIS Contract").  AR Tab 33 at 1267.  In this post-award bid protest matter, ITC challenges the USPTO's decision to take certain corrective action following the award of the HRIS Contract to ITC and the filing of a United States Government Accountability Office ("GAO") protest related to the agency's solicitation for that contract by AvantGarde.  Am. Compl. at ¶ 1.  Specifically, ITC alleges that the USPTO's decision to take corrective action based upon the GAO protest is unreasonable under the circumstances and that the scope of the agency's corrective action is overly broad.  *Id*. at ¶¶ 31-40.  And so, ITC requests, among other things, that the Court declare that the USPTO's decision

---

[1] The facts recited in this Memorandum Opinion and Order are taken from the administrative record ("AR"); plaintiff's amended complaint ("Am. Compl."); plaintiff's motion for judgment upon the administrative record ("Pl. Mot."); and the government's and AvantGarde's respective cross-motions for judgment upon the administrative record ("Def. Mot." and "Def.-Int. Mot.").  Except where otherwise noted, all facts recited herein are undisputed.

to take corrective action is unreasonable and enjoin the USPTO from awarding the HRIS Contract to any offeror other than ITC.  *Id.* at Prayer for Relief.

### 1. The Solicitation

On December 19, 2017, the USPTO issued solicitation number 272P1800032 for human resource information systems division support services as a United States Small Business Administration set-aside (the "Solicitation").  AR Tab 6 at 60-61.  The Solicitation sought proposals to provide services that "support the HR Connect platform . . . report[] services for the purpose of generating analytical information . . . internal web-site administration, and business process review and improvement activities" and that "support the day to day operations and objectives" of the agency.  *Id.* at 124-25.

The Solicitation for the HRIS Contract involves an indefinite-delivery, indefinite-quantity ("IDIQ") contract with a one-year base period and four one-year options.  *Id.* at 61.  Pursuant to the terms of the Solicitation, the USPTO intends to issue firm-fixed-price task orders against this IDIQ contract, with the first task order to be issued in accordance with the Statement of Work and future task orders issued on an "as required" basis.  *Id.*

The Solicitation provides that the USPTO would evaluate responsive proposals based upon three evaluation factors:  (1) Technical Capabilities and Experience; (2) Past Performance; and (3) Price.  *Id.* at 119.  The Solicitation further provides that the USPTO will award the HRIS Contract based upon the "lowest evaluated price of responses meeting or exceeding the acceptability standards for non-price factors."  *Id.* at 121.

Specifically relevant to this dispute, the Solicitation requires that offerors submit firm-fixed-price quotes for the base year and four option year periods.  *Id.*  In this regard, the Solicitation provides that "[e]ach labor category represents a fully-burdened hourly rate for each skills classification."  *Id.* at 120.  The Solicitation also provides that "[a]ll hourly rates are based on a 40 hour work week," and that "[a] Full Time Equivalent ("FTE") is calculated at 1900 hours per year."  *Id.* at 120-21.

On January 11, 2018, the USPTO received responsive proposals to the Solicitation from ITC, AvantGarde, and another offeror—[* * *].  *See generally* AR Tabs 9-11.  Because the USPTO found that these offerors submitted firm-fixed prices—and that there was "confusion"

among the offerors regarding whether the USPTO was procuring labor hours or full time equivalents ("FTEs")—the USPTO decided to amend the Solicitation.  *See* AR Tab 9 at 207 (stating that AvantGarde's "Critical Assumptions" refer to "FP"); AR Tab 10 at 258 ("ITC's pricing is provided as firm fixed price."); AR Tab 11 at 295 ("[* * *] has included our firm-fixed price quote . . ."); AR Tab 12 at 303 ("[w]e didn't call out how many FTEs, we stated minimum hours.").

On January 22, 2018, the USPTO issued an amendment to the Solicitation for the HRIS Contract which:  (1) removed former CLIN 0002 Program Analyst; (2) increased the minimum hours to 13,300 to include the optional CLIN; (3) decreased the maximum hours; and (4) updated the pricing table for the Solicitation to add "1900" as the "Quantity" for each CLIN and to indicate that CLIN 0007 was "Optional."  *See* AR Tab 14 at 383-87.  The amended Solicitation contains the pricing table set forth below:

| CLIN | Item | Quantity | Unit | Rate | Total |
|------|------|----------|------|------|-------|
|      | **Base Year** |          |      |      |       |
| 0001 | Team Lead (Reference Section: 1.2, 1.3, 2.1, 2.6 and 3.7 of SOW) | 1900 | Hour | $ | $ |
| 0002 | Consultant – HR Connect (Reference Section: 2.1 and 2.2 of SOW) | 1900 | Hour | $ | $ |
| 0003 | HR Connect Tier 1 Support (Reference Section: 2.1 and 2.2 of SOW) | 1900 | Hour | $ | $ |
| 0004 | Report Writer/Database Analyst (Reference Section 2.1 and 2.3 of SOW) | 1900 | Hour | $ | $ |
| 0005 | Web-site Administration (Reference Section: 2.1 and 2.4 of SOW) | 1900 | Hour | $ | $ |
| 0006 | Consultant – Business Process Review (BPR)/Knowledge Management (Reference Section: 2.1 and 2.5 of SOW) | 1900 | Hour | $ | $ |
| 0007 | Data Analytics Support (Reference Section 2.1 and 2.7 of SOW) - **Optional** | 1900 | Hour | $ | $ |
|      |      |          |      | **Total** | $ |

*See* AR Tab 14 at 386.

Following the issuance of the amended Solicitation, the USPTO provided responses to several questions from offerors.  *See generally* AR Tabs 15-17.  Specifically relevant to this dispute, on January 23, 2018, the USPTO responded to a question from AvantGarde regarding the labor hours for CLIN 0007 Data Analytics by stating that:

> [AvantGarde should] leave the 1900 hours in the block and just fill in the rate and total for the CLIN. The CLIN [0007] is optional but the CLIN table should still be completed to show what the price would be for the CLIN if it were in fact to be funded.

AR Tab 17 at 468.  Thereafter, AvantGarde telephoned the USPTO's contracting officer "to clarify . . . that the Amended [Solicitation] remained a fixed price quote." AR Tab 50 at 1582 ("Is the government forcing me to bid exactly 1900 hours per FTE per CLIN or do I have the discretion since this is a fixed-price to bid less per FTE like for example, if I wanted to bid say 1880 per year to further offer the government a discount, is that ok?").  The USPTO's contracting officer responded, in error, that "[t]his is a fixed price contract evaluated by Fixed Price dollar amount for the base year plus option periods." *Id.*[2]

### 2.    Award To ITC

On January 23, 2018, ITC and AvantGarde submitted revised proposals in response to the amended Solicitation. *See generally* AR Tabs 18-19.  In their revised proposals, ITC and AvantGarde both submitted firm-fixed-prices.  AR Tab 18 at 472 (stating that AvantGarde's "Critical Assumptions" refer to "FP"); AR Tab 19 at 512 ("ITC's pricing is provided as firm fixed price.").

During the evaluation of the revised proposals, the UPSTO evaluated the lowest-priced offeror—AvantGarde—first, consistent with the terms of the Solicitation. *See* AR Tab 6 at 121. The agency determined that AvantGarde "submitted a price quote that does not conform to the instructions in the RFQ." AR Tab 20 at 514.  Specifically, the USPTO determined that AvantGarde:

> [P]roposed pricing for less than the minimum quantity of required hours.  The RFQ states a minimum requirement of 13,300 hours which equates to 7 Full Time Equivalent (FTE) positions based upon the statement that 1,900 hours is equal to 1 FTE.

> The vendor proposed [* * *]. This is not acceptable as it does not meet the minimum number of required hours as stated in the RFQ.

---

[2] The administrative record reflects that the USPTO's contracting officer "do[es] not remember the exact conversation that took place [with AvantGarde]," but does remember "confirming the contract type for the task orders to be issued against the IDIQ will be Firm-Fixed-Price," and that he "never stated that decreasing or 'discounting' the hours would be acceptable." AR Tab 46 at 1497.

AR Tab 27 at 1197.  And so, the USPTO concluded that AvantGarde's proposal was unacceptable.  AR Tab 31 at 1210.

During the evaluation of ITC's revised proposal, the USPTO determined that ITC's "price quote was submitted in accordance with the instructions in the RFQ and is acceptable." *Id.*; AR Tab 20 at 514.  The USPTO also determined that ITC's proposal was technically acceptable.  AR Tab 30 at 1205-08; AR Tab 31 at 1210.  And so, the USPTO awarded the HRIS Contract to ITC on January 30, 2018.  AR Tab 33 at 1267.

### 3.     AvantGarde's GAO Protest And The USPTO's Corrective Action

On January 31, 2018, the USPTO notified AvantGarde that it had not been awarded the HRIS Contract.  AR Tab 35 at 1275.  On February 1, 2018, AvantGarde filed a protest before the GAO challenging the award of the HRIS Contract to ITC.  *See generally* AR Tab 41.

During the GAO protest, AvantGarde argued, among other things, that the Solicitation as amended contained a latent ambiguity "as to whether [an offeror] was required to bid 1900 hours for each position even though it was offering to perform all of the work in the Statement of Work for its annual fixed-price."  *Id.* at 1315.  On February 14, 2018, the USPTO moved to dismiss AvantGarde's protest upon the grounds that:  (1) the Solicitation was unambiguous; (2) AvantGarde's protest was untimely; and (3) AvantGarde lacked standing.  AR Tab 46 at 1347-51.  On February 20, 2018, the GAO denied the USPTO's motion to dismiss.  AR Tab 51 at 1614.

After the GAO denied the USPTO's motion to dismiss, the "USPTO determined that it is in the agency's best interest to take corrective action" and the agency stated its intent to "amend[] the solicitation language, request[] updated proposals and conduct[] a new evaluation" on February 27, 2018.  AR Tab 53 at 1618.  In reaching the decision to take this corrective action, the USPTO determined that "the language in the [amended Solicitation] may not have been clear enough for the [offerors] to understand the USPTO's intentions."  AR Tab 70 at 1966-67.  And so, the agency concluded that "the purpose of the corrective action is to provide clarity as to the agency's requirement, so that all parties have the same understanding of the contract type to be awarded and what the Agency is procuring (hours and not FTEs)."  *Id.* at 1967.

       **4.**     **United States Court Of Federal**
                   **Claims Litigation And Remand Proceedings**

After ITC commenced this matter on April 13, 2018, the government successfully moved to stay and voluntarily remand this matter to the USPTO, to permit the agency to reconsider the determination that it is in the agency's best interest to take corrective action, and to further document the agency's decision-making process. *See generally* Mot. to Remand, dated April 24, 2018; *see also* Stay and Remand Order, dated April 25, 2018.

On April 30, 2018, the USPTO issued two memoranda for the record stating the reasons for the agency's decision to take corrective action and the plan for implementing the proposed corrective action. In the memoranda, the USPTO explained the reasons for its decision to take corrective action as follows:

> The RFQ was issued with the anticipation that the vendors would respond by quoting 1,900 hours per CLIN. . . . It was anticipated that an IDIQ contract would be awarded and the first Task Order would be issued for CLINs 0001– 0006 for a fixed price per CLIN requiring the vendor to deliver 1,900 hours for each of the labor categories described under CLINs 0001– 0006.

AR Tab 70 at 1966. The USPTO further explained that:

> There was a fundamental misunderstanding of the Agency's requirement. The vendors each thought they were competing for a firm-fixed-price contract where the Government was procuring a fixed scope of work . . . . There were communications with the vendors that may have been construed that the Agency intended a firm-fixed-price contract as opposed to an IDIQ.

*Id.* at 1966-67. And so, the USPTO concluded that "[c]orrective action is needed to clarify this misunderstanding and to allow all parties to have the same understanding of the Agency's requirement." *Id.* at 1967.

In addition, the USPTO identifies several steps that it intends to take to implement the proposed corrective action. *See generally* AR Tab 71. First, the USPTO states that:

> [It] intends to revise the solicitation language to state that an Indefinite Delivery Indefinite Quantity (IDIQ) contract will be awarded and the contract type for Task Orders issued against the IDIQ will be Labor Hours. . . . It was determined that a Firm-Fixed-Price contract type for the Task Orders does not provide the flexibility the program office requires in order to operate successfully. The program officer's requirements are fluid in nature and Firm-Fixed-Price is not conducive to fluid requirements. Labor Hours represents the best contract type to meet the requirements of the program office.

AR Tab 71 at 1968.  Second, the USPTO states that it will change the evaluation process for the Solicitation from lowest price technically acceptable ("LPTA") to a tradeoff, because the "Tradeoff Process will result in a contract award that best meets the requirements of the program office."  *Id.*

Lastly, the USPTO states that it will add language to the Solicitation to explain the structure of the HRIS Contract.  *Id.*  In this regard, the USPTO explains that:

> Vendors will be required to respond to the solicitation with a price quote for the requirements of the first Task Order (CLINs 0001– 0006).  CLIN 0007 is optional and if required, a separate Task Order will be issued. Additional Task Orders may be issued in the future for within scope requirements on an as required basis.

*Id.*

### B.      Procedural Background

On April 13, 2018, ITC filed the complaint in this bid protest matter.  *See generally* Compl.  On April 16, 2018, AvantGarde filed a motion to intervene, which the Court granted on April 17, 2018.  *See generally* Mot. to Intervene; Order, dated April 17, 2018.  On April 17, 2018 the Court entered a Protective Order in this matter.  *See generally* Protective Order.

On April 25, 2018, the Court granted the government's motion to stay and voluntarily remand this matter to the USPTO.  *See generally* Stay and Remand Order, dated April 25, 2018.

Following the remand period, the government filed the administrative record on May 2, 2018.  *See generally* AR.  On May 16, 2018, ITC filed an amended complaint.  *See generally* Am. Compl.

On May 23, 2018, ITC filed a motion for judgment upon the administrative record.  *See generally* Pl. Mot.  On August 3, 2018, the government and AvantGarde filed their respective cross-motions for judgment upon the administrative record and responses and oppositions to ITC's motion for judgment upon the administrative record.  *See generally* Def. Mot.; Def.-Int. Mot.

On August 27, 2018, ITC filed a response and opposition to the government's and AvantGarde's respective cross-motions for judgment upon the administrative record.  *See generally* Pl. Resp.  On October 24, 2018, the government and AvantGarde filed their respective

reply briefs in support of their cross-motions for judgment upon the administrative record.  *See generally* Def. Reply; Def.-Int. Reply.

These matters having been fully briefed, the Court resolves the pending motions.

## III.    LEGAL STANDARDS

### A.    Bid Protest Jurisdiction

The Tucker Act grants the United States Court of Federal Claims jurisdiction over bid protests brought by "an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement."  28 U.S.C. § 1491(b)(1).  This Court reviews agency actions in bid protest matters under the Administrative Procedure Act's "arbitrary and capricious" standard.  *See* 28 U.S.C. § 1491(b)(4) (adopting the standard of review set forth in the Administrative Procedure Act).  Under this standard, an award may be set aside if "'(1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure.'"  *Banknote Corp. of Am., Inc. v. United States*, 365 F.3d 1345, 1351 (Fed. Cir. 2004) (quoting *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001)).  In this regard, the United States Court of Appeals for the Federal Circuit has explained that:

> When a challenge is brought on the first ground, the test is whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion, and the disappointed bidder bears a heavy burden of showing that the award decision had no rational basis.  When a challenge is brought on the second ground, the disappointed bidder must show a clear and prejudicial violation of applicable statutes or regulations.

*Id*. at 1351 (internal citations omitted).

In reviewing an agency's procurement decision, the Court also recognizes that the agency's decision is entitled to a "presumption of regularity."  *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977) (citations omitted).  In addition, the Court should not substitute its judgment for that of the agency.  *Cincom Sys., Inc. v. United States*, 37 Fed. Cl. 663, 672 (1997).  And so, "'[t]he protestor must show by a preponderance of the evidence that the agency's actions

were either without a reasonable basis or in violation of applicable procurement law.'" *Gentex Corp. v. United States*, 58 Fed. Cl. 634, 648 (2003) (quoting *Info. Tech. & Applications Corp. v. United States*, 51 Fed. Cl. 340, 346 (2001), *aff'd*, 316 F.3d 1312 (Fed. Cir. 2003)).

This standard "is highly deferential." *Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1058 (Fed. Cir. 2000). As long as there is "a reasonable basis for the agency's action, the court should stay its hand even though it might, as an original proposition, have reached a different conclusion . . . ." *Honeywell, Inc. v. United States*, 870 F.2d 644, 648 (Fed. Cir. 1989) (citation omitted). But, if "the agency entirely fail[s] to consider an important aspect of the problem [or] offer[s] an explanation for its decision that runs counter to the evidence before the agency," then the resulting action lacks a rational basis and, therefore, is defined as "arbitrary and capricious." *Ala. Aircraft Indus., Inc.-Birmingham v. United States*, 586 F.3d 1372, 1375 (Fed. Cir. 2009) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)) (internal quotation marks omitted).

## B.     Judgment Upon The Administrative Record

Generally, RCFC 52.1 limits this Court's review of an agency's procurement decision to the administrative record. RCFC 52.1; *see Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1379 (Fed. Cir. 2009) ("[T]he focal point for judicial review should be the administrative record already in existence."). And so, unlike a summary judgment motion brought pursuant to RCFC 56, "the existence of genuine issues of material fact does not preclude judgment on the administrative record" under RCFC 52.1. *Tech. Sys., Inc. v. United States*, 98 Fed. Cl. 228, 242 (2011) (citations omitted); RCFC 56. Rather, the Court's inquiry is whether, "given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record." *A & D Fire Prot., Inc. v. United States*, 72 Fed. Cl. 126, 131 (2006).

## C.     Corrective Action

An agency's corrective actions are reviewed under the Administrative Procedure Act's "highly deferential" "rational basis" standard. *Dell Fed. Sys., L.P. v. United States*, 906 F.3d 982, 992 (Fed. Cir. 2018) (quoting *Croman Corp. v. United States*, 724 F.3d 1357, 1363 (Fed. Cir. 2013) (internal quotation marks and citation omitted); *see also Raytheon Co. v. United States*, 809 F.3d 590, 595 (Fed. Cir. 2015) (explaining that, "for us to uphold the [agency's] decision to reopen the bidding process, it is sufficient . . . that the grounds relied on by the

[agency] . . . rationally justified the reopening under governing law"). The Federal Circuit has held that the rational basis test asks "whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion." *Dell Fed. Sys.*, 906 F.3d at 992 (quoting *Banknote Corp. of Am., Inc. v. United States*, 365 F.3d 1345, 1351 (Fed. Cir. 2004) (internal quotation marks and citation omitted)).

This Court has also held that the government is not obliged to admit an error as a precondition to proposing corrective action, nor is it "necessary for an agency to conclude that the protest is certain to be sustained before it may take corrective action." *Data Monitor Sys., Inc. v. United States*, 74 Fed. Cl. 66, 74 (2006) (quoting *ManTech Telecomm. and Info. Sys. Corp. v. United States*, 49 Fed. Cl. 57, 72 n.24) (2001) (citation omitted). And so, "where the agency has reasonable concern that there were errors in the procurement, even if the protest could be denied . . . it [is] within the agency's discretion to take the corrective action." *Id.*

The Federal Circuit has also observed that corrective action in the bid protest context is an "agency action, usually taken after a protest has been initiated, to correct a perceived prior error in the procurement process, or, in the absence of error, to act to improve the competitive process." *Dellew Corp. v. United States*, 855 F.3d 1375, 1378 n.2 (Fed. Cir. 2017); *see also Dell Fed. Sys.*, 906 F.3d at 986 n.1. And so, the task of the Court in assessing whether corrective action is reasonable is to determine: (1) whether the record supports the agency's finding of flaws in the procurement process warrants corrective action and (2) whether the corrective action taken was reasonable under the circumstances. *Sierra Nevada Corp. v. United States*, 107 Fed. Cl. 735, 750 (2012).

### D.      Injunctive Relief

Lastly, this Court "may award any relief [it] considers proper, including declaratory and injunctive relief" pursuant to its bid protest jurisdiction. 28 U.S.C. § 1491(b)(2); *see also Centech Grp., Inc. v. United States*, 554 F.3d 1029, 1037 (Fed. Cir. 2009). In deciding whether to issue a permanent injunction, the Court "considers: (1) whether . . . the plaintiff has succeeded on the merits of the case; (2) whether the plaintiff will suffer irreparable harm if the court withholds injunctive relief; (3) whether the balance of hardships to the respective parties favors the grant of injunctive relief; and (4) whether it is in the public interest to grant injunctive relief." *PGBA, LLC v. United States*, 389 F.3d 1219, 1228-29 (Fed. Cir. 2004) (citing *Amoco Prod. Co.*

*v. Vill. of Gambell, Alaska*, 480 U.S. 531, 546 n.12 (1987) ("The standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success."); *see also Centech Grp., Inc.*, 554 F.3d at 1037. In this regard, the Federal Circuit has held that:

> No one factor, taken individually, is necessarily dispositive. If a preliminary injunction is granted by the trial court, the weakness of the showing regarding one factor may be overborne by the strength of the others. If the injunction is denied, the absence of an adequate showing with regard to any one factor may be sufficient, given the weight or lack of it assigned the other factors, to justify the denial.

*FMC Corp. v. United States*, 3 F.3d 424, 427 (Fed. Cir. 1993) (citations omitted).

A plaintiff who cannot demonstrate actual success upon the merits cannot prevail upon a motion for permanent injunctive relief. *Cf. Nat'l Steel Car, Ltd. v. Canadian Pacific Ry., Ltd.*, 357 F.3d 1319, 1325 (Fed. Cir. 2004) (finding that a plaintiff who cannot demonstrate likely success upon the merits cannot prevail upon its motion for preliminary injunctive relief). In this regard, this Court has also found success upon the merits to be "the most important factor for a court to consider when deciding whether to issue injunctive relief." *Dellew Corp. v. United States*, 108 Fed. Cl. 357, 369 (2012) (citing *Blue & Gold Fleet, L.P. v. United States*, 492 F.3d 1308, 1312 (Fed. Cir. 2007)). But, while success upon the merits is necessary, it is not sufficient alone for a plaintiff to establish that it is entitled to injunctive relief. *See Contracting, Consulting, Eng'g LLC v. United States*, 104 Fed. Cl. 334, 353 (2012) (("Although plaintiff's entitlement to injunctive relief depends on its succeeding on the merits, it is not determinative because the three equitable factors must be considered, as well.") (citations omitted)).

## IV. LEGAL ANALYSIS

The parties have filed cross-motions for judgment upon the administrative record on the issues of whether the USPTO's decision to take corrective action in connection with the Solicitation for the HRIS Contract—and the scope of the proposed corrective action—are rational under the circumstances presented in this case, pursuant to RCFC 52.1. *See generally* Pl. Mot.; Def. Mot.; Def.-Int. Mot. ITC argues in its motion for judgment upon the administrative record that the USPTO's decision to take corrective action is irrational because: (1) the agency failed to articulate a reasonable explanation for this decision; (2) AvantGarde's GAO protest would have been dismissed or denied; and (3) AvantGarde was not eligible for

award of the HRIS Contract.  Pl. Mot. at 8-18.  ITC also argues that the scope of the USPTO's proposed corrective action is "irrationally overbroad," because any flaws in the procurement process for the HRIS Contract do not justify re-issuing the Solicitation and making a new award decision.  *Id*. at 18-19.  And so, ITC requests that the Court set aside the USPTO's decision to take corrective action and declare that the USPTO properly awarded the HRIS Contract to ITC. *Id*. at 20.

The government and AvantGarde counter in their respective cross-motions that the USPTO's decision to take corrective action—and the scope of the proposed corrective action— are rational under the circumstances presented in this case, because there is a need for the USPTO to:  (1) clarify the type of contract being solicitated and that the USPTO is procuring labor hours; (2) respond to the issues raises in AvantGarde's GAO protest; and (3) ensure that the services procured meet the agency's needs.  Def. Mot. at 14-21; Def.-Int. Mot. at 5.  In addition, the government argues that the USPTO has properly documented and explained the decision to take corrective action in the administrative record.  Def. Mot. at 15.  And so, the government and AvantGarde request that the Court sustain the USPTO's decision to take corrective action and dismiss this bid protest dispute.  Def. Mot. at 31; *see also* Def.-Int. Mot. at 2, 5.

For the reasons discussed below, the administrative record in this matter shows that the USPTO reasonably decided to take corrective action to address perceived prior flaws in the Solicitation for the HRIS Contract and that the scope of the agency's proposed corrective action is reasonable considering AvantGarde's GAO protest and the agency's needs.  And so, the Court: (1) **DENIES** ITC's motion for judgment upon the administrative record; (2) **GRANTS** the government's and AvantGarde's respective cross-motions for judgment upon the administrative record; and (3) **DISMISSES** the complaint.

### A.    The USPTO's Decision To Take Corrective Action Is Reasonable

As an initial matter, the administrative record shows that the USPTO has provided a reasonable and coherent explanation for its decision to take corrective action in connection with the Solicitation for the HRIS Contract.  It is well-established that this Court reviews the USPTO's decision to take corrective action under the Administrative Procedure Act's "highly deferential" "rational basis" standard.  *Dell Fed. Sys., L.P. v. United States*, 906 F.3d 982, 992

(Fed. Cir. 2018) (quoting *Croman Corp. v. United States*, 724 F.3d 1357, 1363 (Fed. Cir. 2013) (internal quotation marks and citation omitted)).  And so, the Court will not set aside the USPTO's decision to take corrective action, unless the proposed corrective action is unreasonable under the circumstances presented in this case.  *Id.*

In its cross-motion for judgment upon the administrative record, the government argues that the USPTO appropriately determined that it was necessary to re-issue the Solicitation for the HRIS Contract, so that the agency could clarify the type of contract being solicited, clarify that the USPTO was procuring labor hours, and respond to the issues raised in AvantGarde's GAO protest.  Def. Mot. at 16-19.  The government also argues that the administrative record shows that the USPTO's decision to take this corrective action is reasonable for four reasons:  (1) the USPTO determined that there was a fundamental misunderstanding among the offerors about the type of contract being procured by the USPTO; (2) the USPTO reasonably determined that it was necessary to clarify that the agency was procuring labor hours rather than FTEs; (3) corrective action is necessary to respond to AvantGarde's GAO protest after the GAO denied the USPTO's motion to dismiss; and (4) taking corrective action would ensure that the services procured under the HRIS Contract meet the USPTO's needs.  *Id.* at 14-24.  For the reasons set forth below, the Court agrees.

First, the administrative record shows that the USPTO reasonably determined that there was a "fundamental misunderstanding" among the offerors regarding the type of contract being solicited in connection with the HRIS Contract.  Specifically, the administrative record shows that, during the procurement process for the HRIS Contract, several offerors raised questions, or made statements to the USPTO, indicating that it was unclear that the USPTO was soliciting proposals for an IDIQ contract.  AR Tab 70 at 1966.

In this regard, the Solicitation as amended provides that:

> The Government intends to award a single award Indefinite Delivery Indefinite Quantity (IDIQ) contract for a base year and four one-year option periods . . . . The Government intends to issue Firm-Fixed-Price Task Orders against the IDIQ.

AR Tab 14 at 385.  But, despite the agency's desire to award an IDIQ contract, the administrative record shows that the USPTO determined that:

> There was a fundamental misunderstanding of the Agency's requirement. The vendors each thought they were competing for a firm-fixed-price contract where the Government was procuring a fixed scope of work . . . . There were communications with the vendors that may have been construed that the Agency intended a firm-fixed-price contract as opposed to an IDIQ.

AR Tab 70 at 1966. And so, the administrative record also shows that the USPTO concluded that it needed to take corrective action to clarify the type of contact that the agency intended to award.

The USPTO's determination to take corrective action for this reason is reasonable. The administrative record makes clear that there was uncertainty about the type of contract that the USPTO was soliciting from the outset of this procurement. In fact, the record evidence shows that the USPTO found that the initial proposals submitted by several offerors—including AvantGarde and ITC—incorrectly assumed that the USPTO was procuring a firm-fixed-price contract. *See* AR Tab 9 at 207 (stating that AvantGarde's "Critical Assumptions" refer to "FP"); AR Tab 10 at 258 ("ITC's pricing is provided as firm fixed price."); AR Tab 11 at 295 ("[* * *] has included our firm-fixed price quote . . . .").

The record evidence also shows that the USPTO's efforts to correct this misunderstanding by amending the Solicitation were unsuccessful. *See* AR Tab 14 at 383. After AvantGarde inquired about whether the expectation was for the USPTO to receive a firm-fixed-price quote under the amended Solicitation, the USPTO's contracting specialist responded in error that the agency expected to receive a firm-fixed-price quote. AR Tab 50 at 1582. The record evidence also shows that ITC and AvantGarde both submitted firm-fixed-prices in their revised proposals. AR Tab 18 at 472 (stating that AvantGarde's "Critical Assumptions" refer to "FP"); AR Tab 19 at 512 ("ITCs pricing is provided as firm fixed price."). And so, the government persuasively argues that the administrative record supports the USPTO's determination that corrective action is necessary to address misperceptions about the type of contract that the agency intends to award.

While somewhat less persuasive, the government's argument that corrective action is also necessary in this case to clarify that the USPTO is procuring labor hours rather than FTEs under the HRIS Contract has some support in the administrative record.

The administrative record shows that there was confusion—at least on the part of AvantGarde—about whether the USPTO intended to procure labor hours during the procurement process for the HRIS Contract.  Specifically, the administrative record shows that, during the initial round of the procurement, the USPTO found that AvantGarde was unclear regarding whether the agency was procuring labor hours or FTEs.  AR Tab 13 at 379-80; AR Tab 70 at 1966; *see also* AR Tab 18 at 472 (stating that AvantGarde's critical assumptions state "basis of hours on FTE at 1880 (discounted for USPTO from standard 1900)").  To clarify that the agency was in fact seeking labor hours, rather than FTEs, the USPTO amended the Solicitation by updating the pricing table to show "1900" as the "Quantity" for each CLIN and stating that CLIN 0007 was "Optional."  *See* AR Tab 14 at 383–87.

The agency also responded to a question from AvantGarde regarding the labor hours for CLIN 0007 Data Analytics by stating that:

> [AvantGarde should] leave the 1900 hours in the block and just fill in the rate and total for the CLIN. The CLIN [0007] is optional but the CLIN table should still be completed to show what the price would be for the CLIN if it were in fact to be funded.

AR Tab 17 at 468.  The administrative record shows, however, that AvantGarde remained unclear about whether the USPTO required labor hours or FTEs.  *See* AR Tab 20 at 514 (stating that AvantGarde "submitted a price quote [in its revised proposal] that [did] not conform to the instructions in the RFQ").  And so, there is some support in the record evidence for the USPTO's decision to take corrective action to clarify that the agency intends to procure labor hours.[3]

The Court is also not persuaded by ITC's argument that the USPTO's decision to take corrective action is irrational, because the amended Solicitation is not ambiguous with regards to the agency's requirements.  Pl. Mot. at 9-14.  As the Federal Circuit has recognized, the USPTO may take corrective action within the context of this bid protest "to correct perceived prior error in the procurement process or, in the absence of error, to act to improve the competitive process."  *Dellew Corp. v. United States*, 855 F.3d 1375, 1378 n.2 (Fed. Cir. 2017); *see also Dell Fed. Sys.*, 906 F.3d at 986 n.1.  And so here, the Court need not find that the amended

---

[3] As ITC correctly observes in its motion for judgment upon the administrative record, the administrative record also shows that ITC and other offerors complied with USPTO's requirement.  Pl. Mot. at 11; AR Tab 19 at 502; AR Tab 22 at 598.  But, AvantGarde's confusion about the USPTO's requirement is borne out in the administrative record.

Solicitation is ambiguous to conclude that the USPTO reasonably decided to take steps to correct prior *perceived* flaws in the Solicitation regarding the agency's requirements.

The record evidence also shows that the USPTO appropriately decided to take corrective action in response to AvantGarde's GAO protest, after the GAO denied the agency's motion to dismiss.  In its motion for judgment upon the administrative record, ITC argues that the USPTO's decision to take corrective action in response to AvantGarde's GAO protest is irrational, because that protest would have been denied or dismissed.  Pl. Mot. at 15.  But, as this Court has long recognized, it is not necessary for the USPTO to conclude that the protest is certain to be sustained before it may take corrective action.  *Data Monitor Sys., Inc. v. United States*, 74 Fed. Cl. 66, 74 (2006) (citations omitted).

In this case, the administrative record also shows that the USPTO reasonably decided to take steps to clarify its requirements for the HRIS Contract after the GAO denied the agency's motion to dismiss AvantGarde's GAO protest.  Notably, the administrative record makes clear that the USPTO unsuccessfully moved to dismiss that protest upon the grounds that AvantGarde lacked standing, the protest was untimely, and that the amended Solicitation was not ambiguous.  AR Tab 46 at 1347-51; AR Tab 51 at 1614.  While ITC makes similar arguments in this litigation—to show that the USPTO's decision to take corrective action is irrational—the GAO rejected these arguments and allowed AvantGarde's protest to proceed.  AR Tab 51 at 1614.  Given this, ITC simply has not shown that the USPTO's decision to take corrective action in response to AvantGarde's GAO protest lacks a rational basis.[4]

Lastly, the government persuasively argues that the USPTO reasonably determined that taking corrective action in this case will ensure that the services procured under the HRIS Contract meet the agency's needs.  In its April 30, 2018, memorandum regarding implementation of the agency's proposed corrective action, the USPTO explains that, "a firm-Fixed-Price contract type for the Task Orders [to be issued under the HRIS Contract] does not provide the flexibility that the program office requires to operate successfully."  AR Tab 71 at 1968.  The agency also explains that it needs to change the source selection process from lowest price

---

[4] The Court is also not persuaded by ITC's argument that the USPTO's decision to take corrective action is irrational because AvantGarde is not eligible for award of the HRIS Contract.  As discussed above, it is not necessary for AvantGarde's protest to be sustained in order for the USPTO to take corrective action in this case.  *Data Monitor Sys., Inc. v. United States*, 74 Fed. Cl. 66, 74 (2006).

technically acceptable to tradeoff, because "a Tradeoff Process will result in a contract award that best meets the requirements of the [agency's] program office."[5]  *Id.*  Because the record evidence shows that the USPTO has provided a reasonable and coherent explanation for its decision to take corrective action to ensure that the HRIS Contract best meet the agency's procurement needs, the Court will not set aside the agency's decision.

### B.    The Scope Of The USPTO's Corrective Action Is Reasonable

ITC's claim that the scope of the USPTO's corrective action is overly broad, because it "bears no rational relation to the purported procurement flaws and must be set aside," also lacks support in the administrative record.  Pl. Mot at 19.  In its motion for judgement upon the administrative record, ITC argues that the Court should enjoin the USPTO from re-issuing the Solicitation for the HRIS Contract and accepting new proposals, because the USPTO could use data contained in AvantGarde's current proposal to determine AvantGarde's proposed price.  *Id.* at 18-19.

But, as the Federal Circuit recently confirmed in *Dell Federal Systems, L.P. v. United States*, "corrective action only requires a rational basis for its implementation."  *Dell Fed. Sys.*, 906 F.3d at 991.  And so, the USPTO's corrective action plan in this case need not be the only— or even the best—plan for correcting the perceived prior flaws in the procurement process for the HRIS Contract.  Rather, the USPTO's corrective action must simply be rational.

As discussed above, the record evidence in this case shows that the USPTO's proposed corrective action will clarify the agency's requirements and make changes to the procurement process for the HRIS Contract to best meet the agency's needs.  *See generally* AR Tabs 70-71. And so, ITC has simply not shown that the scope of the USPTO's corrective action is irrational or overly broad based upon the circumstances of this case.

### C.    ITC Is Not Entitled To Injunctive Relief

As a final matter, ITC has also not demonstrated that it is entitled to the injunctive relief that it seeks in this matter because, ITC has not prevailed upon the merits of any of its claims.

---

[5] The administrative record also shows that the USPTO adequately documented the reasons for the agency's corrective action in the agency's two memoranda for the record, which set forth the reasons for the decision to take corrective action and the plan for implementing the corrective action.  *See generally* AR Tabs 70-71.

This Court has held that a plaintiff that has not succeeded upon the merits of its claims cannot prevail upon a request for injunctive relief. *Argencord Mach. & Equip., Inc. v. United States*, 68 Fed. Cl. 167, 176 (2005). And so, the Court must **DENY** ITC's request for injunctive relief.

## V.       CONCLUSION

In sum, ITC has not shown that any of its challenges to the USPTO's decision to take corrective action are supported by the administrative record. Rather, the record evidence in this case shows that the USPTO reasonably decided to take corrective action after determining that there were "fundamental misunderstandings" among offerors about the agency's requirements during the procurement process for the HRIS Contract. The record evidence also shows that the scope of the agency's proposed corrective action is reasonable under the circumstances of this case.

And so, for the foregoing reasons, the Court:

1.  **DENIES** ITC's motion for judgment upon the administrative record;

2.  **GRANTS** the government's and AvantGarde's respective cross-motions for judgment upon the administrative record; and

3.  **DISMISSES** the complaint.

The Clerk shall enter judgment accordingly.

Each party shall bear their own costs.

Some of the information contained in this Memorandum Opinion and Order may be considered protected information subject to the Protective Order entered in this matter on April 17, 2018. This Memorandum Opinion and Order shall therefore be filed **UNDER SEAL**. The parties shall review the Memorandum Opinion and Order to determine whether, in their view, any information should be redacted in accordance with the terms of the Protective Order prior to

publication.  The parties shall **FILE** a joint status report identifying the information, if any, that they contend should be redacted, together with an explanation of the basis for each proposed redaction on or before **March 15, 2019**.

      **IT IS SO ORDERED.**


                   s/ Lydia Kay Griggsby
                   LYDIA KAY GRIGGSBY
                   Judge